UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

REGINALD GHAFFAR MCFADDEN,

        Plaintiff,

   -v-                                    No. 20-CV-06934-FPG

                                              ORDER

JOHN MORLEY, MD, DOCCS, DOHS MC,
et al.,

        Defendants.

_____

## INTRODUCTION

*Pro se* Plaintiff, Reginald Ghaffar McFadden, a prisoner confined at the Wende Correctional Facility ("Wende") filed this action seeking relief under 42 U.S.C. § 1983. He alleges that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution while he was incarcerated at the Attica Correctional Facility ("Attica"). He also sought permission to proceed *in forma pauperis*, which the Court denied because it had found that he had garnered three strikes and had not alleged that he was in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). On appeal, the Second Circuit Court of Appeals vacated the Court's Order and remanded this action finding that Plaintiff had alleged imminent danger of serious physical injury. ECF No. 15. Following remand but before the Court had the opportunity to screen the Amended Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, Plaintiff filed a Second Amended Complaint, ECF No. 18, and a Motion seeking this Court's recusal, ECF No. 16.

Pursuant to the Second Circuit's remand directions, the Court grants Plaintiff permission to proceed *in forma pauperis* and now screens the Second Amended Complaint under 28 U.S.C.

§§ 1915(e)(2)(B) and 1915A.  For the reasons that follow, a number of Plaintiff's claims are dismissed with prejudice, several claims are dismissed with prejudice unless Plaintiff files a third amended complaint with respect to those claims as directed below, and one claim may proceed to service.

Because the Court finds no basis for recusal, Plaintiff's Motion for recusal is denied without further comment.  *See* 28 U.S.C. § 455(a) (A judge is required to recuse herself from "any proceeding in which [her] impartiality might reasonably be questioned.").[1]

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The court shall dismiss a complaint or amended complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2).  Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted).  But leave to amend pleadings may be denied when any amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

---

[1] Plaintiff has previously sought this Court's recusal.  *See, e.g.*, *McFadden v. Williams*, 6:18-CV-06684 FPG ("*McFadden II*"), ECF No. 86.  As further addressed below, Plaintiff's arguments that certain New York State Assistant Attorneys General lied and committed "fraud on the court" have been rejected previously by this Court.  *See infra* at 15-18.

## I.   The Amended Complaint

In evaluating a complaint, the court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)).  Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure.  *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

Plaintiff sues several supervisory, security, medical, investigatory, and religious personnel within the New York State Department of Corrections and Community Supervision's ("DOCCS") Central Office and at Attica and Wende, alleging violations of his: (1) rights to petition the government, remain silent, counsel, and due process, ECF No. 18 at 15-17 (Second Cause of Action); (2) right to adequate medical care, *id.* at 17-23 (Third and Fourth Causes of Action); (3) right to exercise his constitutional rights without retaliation, *id.* at 23-26 (Fifth Cause of Action); (4) right to freely practice his religion, *id.* at 26-30 (Sixth Cause of Action); and (5) right not to be exposed to second-hand smoke, *id.* at 30-32 (Seventh Cause of Action).  He also sues the New York State Attorney General and four Assistant Attorneys General in the Rochester Regional Office alleging a violation of his right of access to courts.  *Id.* at 7-14 (First Cause of Action).

Liberally construing the Amended Complaint, Plaintiff alleges the following.

### a.  Access to Courts (First Cause of Action)

3

Plaintiff alleges that Defendants Assistant Attorneys General ("AAG") McKay, Levine, Brown, and John/Jane Doe Assistant Attorney General, who appeared in two prior actions filed by Plaintiff in this Court—*McFadden v. Annucci*, 6:16-CV-06105 ("*McFadden* I") and *McFadden v. Williams*, 6:18-CV-06684 ("*McFadden* II")—filed false or fraudulent Acknowledgments of Receipt of Service by Mail ("Acknowledgments"). ECF No. 18 at 7-14. He alleges that McKay, Levine, Brown, and Doe lied about the dates of service in those prior actions and dated certain Acknowledgments outside the time that the summonses indicated the defendants had to answer or move against the complaints, *i.e.*, within 21 days after service, thus committing a fraud on the Court. *Id.* The AAGs knowingly set forth false dates of service to deceive the Marshals Service and the Court. *Id.* 11. This, Plaintiff alleges, was a practice intended to obtain unwarranted extensions of time to answer the complaint pursuant to the Standing Order. *Id.* at 12. Plaintiff further claims that AG James was obligated to supervise and discipline her employees, and that she and her AAGs conspired with Defendant Kevin Braun, Deputy Commissioner and DOCCS Counsel, to commit fraud on the Court and obtain "fraudulent [p]ersonal [j]urisdiction over otherwise [d]efaulted defendants." *Id.* at 13.

## II.    Rights to Petition the Government, Remain Silent, Counsel and Due Process

On February 18, 2018, Plaintiff was brought to the visiting room at Attica to be interviewed by Defendant J. Spangler, Deputy, Office of Special Investigation ("OSI"). Plaintiff refused to speak with Spengler without counsel thereby "exercising" his right to remain silent. Because of this refusal, Spengler, along with Defendant J. Noeth, Attica Superintendent, and other Attica officials, in circumvention of DOCCS Directives 4910, 4910A and others, had Plaintiff moved to the infirmary so his cell could be searched. Property was removed from his cell, including legal materials and religious books. ECF No. 18 at 15. In response to Plaintiff's grievances, Defendants

Moore, OSI Deputy and Spangler's supervisor, and Spengler admitted they seized approximately 151 letters and papers from Plaintiff's cell. *Id.* at 16.

Plaintiff was then issued a false misbehavior report by Spangler and Moore, which Noeth was made aware of during his rounds. Defendant J. Clinton, Deputy Superintendent, Programs, was assigned to conduct the Tier III Superintendent's Hearing. *Id* at 15. Plaintiff requested the testimony of the inmate named in the misbehavior report and alleged to have given legal assistance. This inmate had initially agreed to testify, but at the Hearing, Clinton refused to verify that the inmate changed his mind and indicated only that the inmate was no longer at the facility. *Id.*

On March 5, 2018, Clinton found Plaintiff guilty of the charges. Spangler—the author of the misbehavior report—did not testify. Superintendent Noeth affirmed the disposition, but it was later reversed and expunged in a New York Article 78 proceeding, N.Y. C.P.L.R. §§ 7801-7806. Plaintiff alleges that by exercising his rights to remain silent during the interview with Spangler, Defendants decided that they would issue the misbehavior report and "instead" accuse Plaintiff of "potential crime."[2] This, he claims, violated his right to due process *Id.* at 16. During this time-period, Plaintiff had been engaged in physical therapy and Hepatitis-C treatment, which was interrupted by Defendants' actions. *Id.*

Plaintiff also alleges that Defendant Maher, OSI Director, is responsible for failing to train Spangler and Moore, and that Defendant Anthony Annucci, DOCCS Acting Commissioner, failed to take any corrective action. *Id.* at 17.

### a. Denial of Adequate Medical Care: Failure to Diagnose and Properly Treat Cancer (Third Cause of Action)

---

[2] Plaintiff does not indicate what the "potential crime" was.

Plaintiff alleges that Defendants D. Graf, Attica Physician Assistant ("PA"), A. Schunk, Attica Nurse Practitioner ("NP"), and Dr. Williams, Attica Medical Director, knew of Plaintiff's medical history and should have taken notice of the signs and symptoms of cancer he exhibited. ECF No. 18 at 18.  They ignored his symptoms until a "final diagnosis" on July 7, 2021. *Id.*  In April through June 2021, PA Schunk diagnosed Plaintiff's condition as an ear infection, and Dr. Williams ordered two x-rays that were taken at the Wyoming County Medical Center and diagnosed "Soft Skin Tissue," and prescribed antibiotics.  *Id.* at 18.  Plaintiff was then seen at Wende by Defendant Dr. Young who diagnosed Plaintiff with "Tonsil Cancer" and recommended treatment.  *Id.*

On July 7, 2021, three days after requesting emergency sick-call, Plaintiff was placed in the infirmary at which time Defendant John Doe, Infirmary Officer, questioned the seriousness of Plaintiff's medical condition and "continue[] to abuse his authority by denying Plaintiff's right to wear . . . eye-glasses and hearing aids."[3]  Plaintiff was then taken to the "Monroe County Medical Center" ("MCMC"),[4] where he was diagnosed with cancer of the "Lymph Nodes."[5] *Id.* at 19. DOCCS was informed of the diagnosis and told that MCMC was prepared to admit Plaintiff and treat his cancer.  *Id.* at 19.  "Someone" within DOCCS informed MCMC not to admit Plaintiff and treat his cancer and to transfer him to the Erie County Medical Center ("ECMC") where a doctor

---

[3] Allegations regarding the denial of eyeglasses and hearing aids were raised in *McFadden I*.  The eye-gasses claim was dismissed but the hearing aid claims remains pending.  *McFadden I*, Docket Item 107 at 24-25, 33-34.  Therefore, any claim related to the denial of eyeglasses and hearing aids is dismissed as duplicative.  *See Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) ("[R]epetitious litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. § 1915[e] as malicious.").

[4] The Court is not familiar with a hospital by this name in the Monroe County area.

[5] Plaintiff previously informed the Court that he was diagnosed with Lymphoma, which the Court assumes is cancer of the "Lymph Nodes."  *McFadden II*, ECF No. at 114 at 3.

and bed was available.  *Id.*  Doctors at ECMC "refused" to sign off on a treatment plan and agreed to confirm MCMC's diagnosis and treat Plaintiff with "six rounds" of chemotherapy.  *Id.*

Plaintiff was transferred to Wende's Regional Medical Unit ("RMU") for his chemotherapy treatments.  Wende RMU had "more intense treatment monitoring" and Plaintiff had to be fed through a feeding tube, which had to remain "clear" to prevent infection.  *Id.*

Plaintiff alleges that Defendants J. Morley, DOCCS Chief Medical Officer, Graf, Schunk, and Dr. Young were deliberately indifferent when they failed to diagnose and treat his cancer.  *Id.*

### b.  Interference with Medical Care and Treatment (Fourth Cause of Action)

### i.  Use of Leg Restraints and other Security Measures

Plaintiff alleges that between February and July 7, 2021, Defendants Paul Sutter and John Doe, both Attica Sergeants ("Sgt."), and escort officers transporting Plaintiff to ECMC and MCMC, deliberately interfered with his medical condition and treatment.  Sutter used leg-restraints that often re-injured his left ankle bone fracture and later, in a conflict of interest as the Grievance Sergeant, alone decided the grievance filed against him for use of leg restraints.  On July 7, 2021, Sgts. Sutter and Doe told their supervisor that Plaintiff's actions were "Stagecraft." *Id.* at 20.  They also "constantly interfere[ed]" with his treatment by "excessive use of security measures," including "leg-chain[ing]" Plaintiff to his bed and tight handcuffing cutting off blood circulation and causing unnecessary pain.  *Id.* at 19-20.

### ii.  Interference with Physical Therapy

After the re-injury to Plaintiff's left ankle, Defendant PA Graf recommended physical therapy, which was approved on October 22, 2019. When Plaintiff arrived for therapy, however, it conflicted with a mandatory law library call-out and he chose to go the law library because if he

failed to, he would obtain a misbehavior report.  Plaintiff also alleges that his left elbow was painful

due to the tight handcuffs and that physical therapy was recommended to treat it.  The physical

therapist never executed a Refusal of Medical Examination and/or Treatment Form and allowed a

security staff member to execute it. [6]  *Id.* at 21

### iii.   Refusal to Provide a Cane

Plaintiff alleges that he uses a walker due to a denial of physical therapy for his left ankle

bone fracture in 2007.  Defendants PA Graf, NP Schunk, Dr. Williams, and Dr. Morley refuse to

provide him a cane, forcing Plaintiff to walk on a painful, swollen left ankle. [7]

### iv.   Failure to Protect Plaintiff from COVID-19

Plaintiff asserts he has underlying medical conditions that make him more susceptible to

contracting COVID-19 and becoming ill even though he is vaccinated (two shots).  Defendants

Annucci and Morley and the infectious disease doctors at Attica, Wende, and outside hospitals,

"could not ensure that they can prevent Plaintiff from contracting" the virus, because "either other

inmates, staff or outside hospital staff ([m]any refusing to get shots or be[] tested) threatening

Plaintiff's life prompting [a grievance] here at Wende [RMU], where the most ill inmates are held,

staff come and go without wearing a simple mask, etc."  *Id.* at 21-22.  Supervisors often fail to

enforce safety protocols unless some high-level supervisor is on the Unit.  *Id.* 22.

---

[6] These allegations are confusing and illogical.  Plaintiff alleges that Sutter re-injured his ankle between February and July 7, *2021*, and Graf recommended physical therapy for his ankle, which was approved on October 22, *2019*. Plaintiff also does not allege when the physical therapist failed to properly execute the refusal for treatment form and whether it was in 2019 or 2021.  ECF No. 18 at 20-21.

[7] The Second Amended Complaint does not indicate when these Defendants denied him a cane or whether it has been a continuous denial since 2007.

Plaintiff had received two rounds of chemotherapy and was at ECMC for a third round when, according Wende RMU, he was treated by someone who tested positive.  *Id.* at 22.

**v.  Deliberate Indifference to Serious Medical Need (Side-Effects from Chemotherapy)**

On July 2, 2021, Plaintiff was sent to Wende RMU to monitor his chemotherapy.  Two days after his last "prep" for his third round of chemotherapy, the left-side of his face and neck swelled and was painful.  Plaintiff reported this to Defendants Nurse Reddie and Nurse Henson daily until Plaintiff had to contact security officers to call medical to his room.  *Id.*  Neither nurse came to his room but Reddie called a doctor, who called an ECMC doctor, who told Wende's RMU that Plaintiff was exposed to COVID-19.  *Id.*  Plaintiff was quarantined in his room from Friday through Monday at some point in August 2021 and then quarantined until the end of August upon the advice of an Infectious Control Nurse, Defendant John/Jane Doe.  *Id.*  Plaintiff's third chemotherapy was scheduled that "same week" and Plaintiff was told that ECMC cancelled it and his chemotherapy was stopped.  The swelling and pain in his face worsened and Plaintiff had to be taken by ambulance to ECMC's Emergency Room.  He was discharged pending a biopsy.  *Id.*  "[W]hen the time for a [b]iopsy came, Plaintiff . . . learned that another biopsy was performed on the assumption that Plaintiff had "Tonsil Cancer."  *Id.*  Following the biopsy, the swelling to the left side of his face "went down" during the third round of chemotherapy but then spread to the right side of his face.  This resulted in another recommended biopsy when he was discharged on August 3, 2021.  *Id.* at 23.  At the time of filing the Amended Complaint, the swelling, but with less pain, has returned to the left side of his face, and he is experiencing pain down his legs.  The third biopsy is "off the table" and the doctors are jointly meeting to discuss the current

chemotherapy treatment regimen.   Because of Plaintiff's heart disease and pacemaker, chemotherapy treatments are limited.   *Id.*

### vi.   Retaliation for Exercising his First and Eighth Amendment Rights

Plaintiff asserts that following his transfer from ECMC to Wende RMU, he did not have his personal property and, according to the Patient Orientation Handbook, he should have been provided several personal items, including daily hygienic products, razors, and pajamas.   When Defendants CO Constanzo and Nurse Henson did not provide these items to Plaintiff, he filed a written complaint to Defendant Wende Superintendent Eckert, who delegated it down the chain of command.   It was eventually delegated to the RMU Sgt., either Defendants McCann or Miller, "which involve[d] the retaliatory action taken by Defendant CO Constanzo for going over his head and complaining to [the] Executive Staff."   *Id.* at 23-24.   Constanzo issued a false misbehavior report charging Plaintiff with refusing to cut his facial hair in violation of his First Amendment right to freely practice his religion.   A side-effect of Plaintiff's chemotherapy was the loss of facial hair, and Constanzo ordered Plaintiff to pay for another photo ID because he was losing his hair. After his facial hair grew back, Constanzo ordered Plaintiff to pay for another photo ID.   *Id.* at 24-25.

Upon issuance of the misbehavior report, Plaintiff went on a hunger strike that required Wende's executive staff to investigate why and to follow certain guidelines.   Costanzo, realizing this, decided along with Defendant Jane Doe Nursing Staff, to "use their influence" with a mental health unit staff member and have Plaintiff placed on one-on-one suicide watch, despite a social worker's recommendation that Plaintiff did not need mental health intervention.   *Id.* at 25.   Plaintiff was escorted to the second-floor suicide watch room and Plaintiff recalled telling staff, including Defendant M. Bouncel, Correctional Counselor, he was on suicide watch.   Bouncel stated, "We

know you are on chemo . . . ." *Id.*  While on suicide watch, Plaintiff had no clothes nor his hearing aids, eyeglasses, and walker, and was forced to rest on a mat on the floor.  He endured verbal abuse by staff, which included Defendant CO Bond, who did not like being told not to smoke, telling him, "Shut up? Before I F . . k you in the Ass, and it will feel good . . . ." *Id.*  Plaintiff, who had been the victim of sexual abuse in the past, reported this to the Wende nursing staff, a lieutenant, and finally an area sergeant, whom he recognized from Attica where he had complained of similar abuse.  None of them took any corrective action. *Id.* at 26.

When he was released from suicide watch, Plaintiff filed a formal complaint with Jason Effman, DOCCS Director of Sexual Abuse Prevention, who referred it to OSI.  Defendant Brown, Wende Acting Superintendent of Programs, found no merit in Plaintiff's complaint but referred the complaint to OSI.  OSI investigators later visited him to investigate the complaint. *Id.*  During suicide watch, Plaintiff's feeding tube was not cleared, exposing Plaintiff to potential infection.  His release was within the seven-day time period to timely conduct his Tier II superintendent hearing related to Constanzo's misbehavior report, but the hearing officer extended the period to justify conducting a timely hearing and failed to call Costanzo as a witness at the hearing.  Plaintiff asserts that these actions violated his procedural due process rights and that Defendant Brown failed to correct the errors. *Id.*

### vii.  Freedom of Religion

Plaintiff is a Muslim who accepted the "Shi'a Ithna Asheriyya" faith in 1977.  Plaintiff asserts that he is associated with two parts of the Shi'a faith: External Aspects and Internal Aspects, and that these two aspects are occasionally in conflict.  He is a "Initiated Darvest of a given Order of Darveshes, [which] is not a new religion outside Islam, though [from] time to time, externally some Daveshes appeared to be outside the Fold of Islam." *Id.* at 27.  Within Islam's two major

sects: Sunni and Shi'a, there are those who are Sufi or Darvesh, who follow either Sunni or Shi'a law. *Id.* Sufi-Darvish can tolerate their Sunni and Shi'a brothers and sisters, but not all Sunni and Shi'a brothers and sisters can do likewise. *Id.* at 28. There is an ancient conflict between Muslims who identify as either Sunni or Shi'a and this conflict has made its way into this country's prisons. *Id.* at 27-28.

DOCCS "has s[een] the wisdom" to provide all Muslims inmates representation within the Sunni and Shi'a "sects" from Defendants Muhammad Adman and Muhammad Muhbi, "whose functions include guiding Prisoner-Muslims regardless of their creed, toward Right Conduct and away from Bad Conduct." *Id.* at 28-29. Some of the Sunni and Shi'a religious books distributed within the prisons, lack historical and ethical guidance and their "laws" have outlived their usefulness. *Id.* at 28. Plaintiff asserts that "[t]hose who send these books inside prison, should be held liable for their contents and the wrong[s] committed by those who believe they are following dictates of their respective faiths." *Id.* at 29. This leads to "radicalization" or "intolerance for others." Thus, Defendants Adman and Muhbi "are personal[ly] liable for not guiding" the Muslim-prisoners, "who are left alone to interpret[]" religious texts on their own without any regard to historical texts and teachings. *Id.* Because of this, Plaintiff has been physically and mentally abused by both Sunni and Shi'a adherents to the Islamic faith because he has refused to "follow them in the matters that conflict with Reason and Faith." *Id.* at 30. While "Plaintiff can worship among either Sunni or Shi'a, they refuse [to] allow [him] to worship in the mode of the Way of the Darveshes." *Id.* In order to avoid this conflict, Plaintiff fasts and worships in his cell. *Id.*

### G. Exposure to Second-Hand Smoke

Plaintiff alleges that he is 69 years old and has never smoked cigarettes but has been exposed to second-hand smoke throughout his incarceration since 1996. He has made several

complaints regarding this exposure.  *Id.* at 30-31.  He asserts that Defendant Annucci "knew or should have known" that second-harm smoke "was causing [his] Heart Disease resulting in [a] Massive Heart Attack [in 2019] and [his] subsequent diagnosis of Lymph Nodes Cancer (2021)." *Id.* at 31.  Despite knowledge of the risks, DOCCS continued to sell cigarettes to prisoners over 21 years of age and has placed a "multi-million" dollar profit over the health of prisoners.  *Id.*

Plaintiff seeks over 15 million dollars in damages, a declaration that Defendants' actions were unconstitutional, and an injunction enjoining Defendants from continuing their unconstitutional actions.  *Id.* at 32.

## III.   SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command.  *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).  Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  "[T]here is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove that each Government-official

defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

## IV.    ANALYSIS

### a.    Access to Courts (First Cause of Action)

Plaintiff alleges that AAGs McKay, Levine, Brown, and Jane or John Doe, Assistant Attorneys General, who represent or previously represented the other Defendants in *McFadden I and II*, lied on Acknowledgments they signed and filed with the Marshals Service regarding the dates the defendants in those two actions received the summonses and complaints.  ECF No. 18 at 7-14.  Plaintiff claims this denied him access to courts in violation of the First Amendment.

Service is not complete until the defendant, his/her attorney, or his/her agent for service returns a signed Acknowledgment, N.Y. C.P.L.R. § 312-a(b), and the date the defendant, his/her attorney or his/her agent signs and dates the Acknowledgment determines the date defendant must serve and file an answer or other responsive pleading.  Under the Court's Standing Order, if the Acknowledgment is dated and signed within 30 days of the date it was mailed, a defendant who is employed by DOCCS has 60 days to serve and file an answer or motion in response to the complaint; if it is dated and signed 30 days after the date it is mailed, a defendant has 21 days to serve and file an answer.  *See Lewis v. Gowanda Corr. Fac.*, No. 15–CV–0168A, 2015 WL 5146997, at *4 n.3 (W.D.N.Y. Aug. 28, 2015).

Plaintiff does not explain how the alleged lies or fraud denied him access to courts.  At most, all he can claim is that the alleged lies or fabrication led to the denial of entry of default under Fed. R. Civ. P. 55(a).  See *Blocher v. Rice*, 19-CV-1295, 2021 WL 4463811, at *3 (W.D.N.Y. Sept. 8, 2021) (the entry of default under Rule 55(a) "is a mandatory perquisite for entry of default judgment pursuant to Rule 55(b)").  Whether to grant a default judgment is left to

the sound discretion of the district court "because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993).

"The constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress." *Whalen*, 126 F.3d at 407. To succeed on an access-to-court claim, a plaintiff must demonstrate "actual injury" by proving that the denial of access "hindered his efforts" to pursue a non-frivolous legal claim. *See Lewis v. Casey*, 518 U.S. 343, 349, 351–53 (1996); *see also Christopher v. Harbury*, 536 U.S. 413, 415 (2002) ("[O]ur cases rest on the recognition that the right [of access to the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.").

Liberally construing Plaintiff's allegations and taking judicial notice of the docket reports and orders entered in *McFadden I* and *II*, Plaintiff asserts that Defendants lied about the date or dates their clients received the summonses and complaints or amended complaints and therefore denied him the ability to obtain a default judgment. In *McFadden I* and *II*, Plaintiff filed several motions for default judgment that were all denied by the Court, as well as motions for reconsideration. It is abundantly clear that Plaintiff simply is trying to relitigate the Court's previous denials of his multiple motions for default judgment and reconsideration of those denials. This is something the Court will not countenance. *Cf. Thomas v. Pingotti*, No. 17-CV-0300, 2017 WL 3913018, at *1 & n.2 (N.D.N.Y. Sept. 6, 2017) ("The dismissal of an action as duplicative has been found on several occasions to fall within the ambit of the court's power to dismiss a complaint which is frivolous or malicious pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).").

Further, Plaintiff does not allege that his underlying claims were prejudiced or hindered by the alleged fraudulent conduct or lies.  The alleged conduct, even assuming its truth, did not lead to or cause the dismissal, forfeiture, or loss of his claims in *McFadden I and II*.  At most, it caused the denial, in part, of his motions for default judgment.  The new access-to-court claims alleged herein are not the manner in which Plaintiff may challenge the Court's previous findings or the AAGs' alleged conduct.  This claim is therefore dismissed with prejudice against AG James and AAGs McKay, Levine, Brown, and Jane or John Doe.  *See Cuoco*, 222 F.3d at 112 (finding leave to replead would be futile where the complaint, even when read liberally, did not "suggest[] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").

> **b. Rights to Petition Government, Remain Silent, Counsel and Due Process (Second Cause of Action)**

Plaintiff alleges that on February 18, 2018, he was called to the visiting room for an interview with Defendant Spangler, OSI.  Plaintiff refused to speak with Spangler without counsel. Because Plaintiff refused to participate in the interview, Spangler and Defendant Moore, OSI, decided along with Attica Superintendent Noeth and other Attica officials to move him to the infirmary, as a pretext to search his cell.  During this cell search, all of Plaintiff's property was removed, including legal materials and books.  Spangler and Moore issued a misbehavior report. At the Tier II Superintendent's Hearing, Defendant Clinton refused to verify that an inmate witness, who had initially agreed to testify, had executed an Inmate Refusal to Testify Form, and indicated only that the inmate was no longer at Attica.  Clinton also did not question Spangler. Plaintiff was found guilty of the charges and Noeth affirmed this finding.  ECF No. 18 at 15-17.

Plaintiff alleges that because he refused to be interviewed by Spangler, Defendants decided to search his cell, falsely charged him with rule violations, and denied him due process at the subsequent Tier II Hearing.  *Id.* at 16.

Plaintiff raised this same claim in *McFadden II*, which the Court dismissed on the defendants' motion to dismiss for failure to state a claim.  *McFadden II*, ECF No. 89 at 10-12. Plaintiff cannot raise claims previously raised in other actions and, accordingly, this claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1) as repetitive and frivolous.  *See Thomas*, 2017 WL 3913018, at *1 n.2.[8]

### c.  **Failure to Diagnose and Treat Plaintiff's Cancer (Third Cause of Action)**

Plaintiff alleges that Defendants PA Graf, NP Schunk, Dr. Williams, Dr. Morley, and Jane Doe, RN, failed to diagnose and properly treat his lymph nodes cancer.  ECF No. 18 at 17-18.  He asserts that Graf, Schunk, and Williams should have "t[aken] notice of the [s]igns and [s]ymptoms of [c]ancer," but they "instead . . . ignored [the] signs and symptoms of [c]ancer until [a] final [d]iagnosis" by an outside hospital on July 7, 2021.  *Id.* at 18.  On July 7, 2021, after requesting an emergency sick-call, he was called out to the infirmary, where Defendant John Doe Infirmary Officer questioned the seriousness of his complaints.  He was taken to MCMC that same day, where he was diagnosed with cancer in his lymph nodes.  DOCCS informed MCMC not to admit and treat Plaintiff because he had a doctor and bed at ECMC.  Doctors at ECMC refused to sign off on the "treatment plan" but rather confirmed MCMC's diagnosis and decided to treat Plaintiff with six rounds of chemotherapy.  *Id.* at 18-19.  Plaintiff was then transferred to Wende RMU

---

[8] Plaintiff's attempts to re-package these claims as, for example, denials of his right to remain silent and counsel, does not alter this conclusion.

where his chemotherapy treatments could be "intensely" monitored.  *Id.* at 19.  At Wende, he claims, he was subjected to conditions that compromised his treatments and health.  *Id.*[9]

Liberally construed, this claim raises a violation of the Eighth Amendment proscription against cruel and unusual punishments.  U.S. Const. amend. VIII.  As with other Eighth Amendment claims, denial of adequate medical care claims is analyzed under a deliberate indifference standard.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  This standard has both an objective and subjective component.  *Hathaway* v. *Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  Objectively, a plaintiff must allege a serious health condition.  *Id.* at 66.  "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"  *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  Subjectively, a plaintiff must allege that prison officials had actual knowledge of his serious medical need but was deliberately indifferent.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "[T]he charged official must act with a sufficiently culpable state of mind," *i.e.*, "something more than mere negligence," and akin to criminal recklessness.  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

"[A] [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.  Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 106, "involve[s] the unnecessary and wanton

---

[9] The specific allegations regarding how he was improperly treated at Wende are set out as separate and different claims in the Second Amended Complaint, ECF No. 18 at 20-26 (Fourth and Fifth Cause Action); *see also id.* at 8-11. These allegations will be addressed separately below in the manner they are raised in the Second Amended Complaint. This discussion addresses only the failure to diagnose and treat Plaintiff's cancer.

infliction of pain," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 102 (internal quotation marks and citations omitted). Accordingly, not every claim of inadequate medical treatment made by a prisoner states a violation of the Eighth Amendment.  See *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

At this stage in the litigation, Plaintiff's cancer alleges a serious medical condition. Further, whether Defendants Graf, Schunk, and Williams' alleged failure to diagnose his cancer, *see* ECF No. 18 at 18-19, rises to the level of deliberate indifference in violation of the Eighth Amendment or medical malpractice that is not actionable under § 1983, is not a determination the Court should make on screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Accordingly, the claims against Graf, Schunk and Williams related to the diagnosis of Plaintiff's cancer may proceed to service.[10]

With respect to Dr. Morley, Jane Doe RN, and John Doe CO, however, Plaintiff's allegations fall short of alleging a plausible claim of deliberate indifference against them.  See ECF No. 18 at 17-19.  As to Dr. Morley, DOCCS's Chief Medical Officer, there are no allegations that he was personally involved in the alleged failure to diagnose Plaintiff's cancer.  His role as Chief Medical Officer alone is not sufficient to allege a claim against him under § 1983.  See *Tangreti*, 983 F.3d at 618 ("[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." (internal quotation marks omitted)).  Second, there are no specific factual allegations against Jane Doe Nurse.  She is referred to only at the beginning of this claim where it is stated that "Jane Doe" was "put on notice"

_____

[10] Plaintiff is cautioned that if he files a third amended complaint it may only include clams raised in the Second Amended Complaint that the Court concludes herein may (1) proceed to service or (2) fails to state a claim upon which relief can be granted but is granted leave to amend.  **He may not include in the third amended complaint (1) new or supplemental claims not previously raised in the Second Amended Complaint or (2) claims that are dismissed herein with prejudice without leave to amend.**

by [N.Y. Comp. Codes R. & Regs. tit. 9 § 7651-1]" that inmates must be provided with adequate health care. ECF No. 18 at 17. Lastly, John Doe Infirmary Officer is alleged to have questioned the credibility of Plaintiff's complaints when he was in the infirmary. There are no allegations that this Defendant was involved in any way with Plaintiff's medical care and treatment or that his questioning of the seriousness of Plaintiff's condition resulted in the denial of proper medical care or treatment.

Plaintiff's claims against these three Defendants will therefore be dismissed with prejudice unless he files a third amended complaint as directed below.

### d.   Interference with Medical Care and Treatment (Fourth Cause of Action)

Plaintiff alleges that following his cancer diagnosis on July 7, 2021, Defendant—"[u]nder the [r]use of security"—interfered with his medical care and treatment in several ways: the use of excessive force, interference with physical therapy, denial of a cane, failure to protect him from exposure to COVID-19, and deliberate indifference to the side-effects of chemotherapy treatment. ECF No. 18 at 20-23. Each are addressed separately below.

As addressed above, an incarcerated plaintiff may prevail on an Eighth Amendment claim only if he demonstrates that: (1) his medical condition is objectively a serious one (the "objective" prong); and (2) the defendant acted with deliberate indifference to the plaintiff's medical needs (the "subjective" prong). *Brock v. Wright*, 315 F.3d 158, 162, 164 (2d Cir. 2003); *see also Farmer*, 511 U.S. at 834. "[W]hether . . . manifested by prison doctors in their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed[,] . . . deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104-05.

20

### i. Excessive Force: Use of Leg Restraints

Plaintiff alleges that between February and July 7, 2021, Sgts. Sutter and John Doe "deliberately interfered with a serious condition[], that was made worse by their malicious actions done in retaliation for [filing grievances,]"[11] ECF No. 18 at 20, when they used leg restraints during transport to and from outside hospitals. *Id.* Sgts. Sutter and Doe were also overheard during a transport to MCMC saying that Plaintiff's "actions" were "Stagecraft." *Id.*

First, it is unclear how Plaintiff's claim that Defendants' actions related to the use of leg restraints amount to deliberate indifference to his serious medical need—*i.e.*, complaints and symptoms of cancer. Liberally construed as a deliberate indifference claim, the Court finds that it fails to state a claim upon which relief can be granted. While Plaintiff alleges that Sutter and Doe questioned the credibility of his complaints, there are no allegations that this led to a denial of medical care or treatment or, more specifically, a failure to diagnose cancer.

Further, if construed as an Eighth Amendment use of excessive force claim based on the use of leg restraints, see *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[T]he pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they suggest." (internal quotation marks omitted)), it fails to state a claim upon which relief can be granted. While it has been held that restraints on an inmate's liberty may violate the Eighth Amendment if "they are totally without penological justification, grossly disproportionate, or involve the unnecessary and wanton infliction of pain [,]" *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984) (internal quotation marks omitted), Plaintiff alleges only that Sutter used

---

[11] The Court does not construe this allegation as asserting a First Amendment retaliation claim but, if it did, it would be dismissed because it fails to state a claim upon which relief can be granted. See, e.g., *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) (To state a retaliation claim under § 1983, "a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." (internal quotation marks omitted)). If Plaintiff intended to raise a retaliation claim based on the use of leg restraints, he may raise said claim in a third amended complaint if he chooses to file one.

"excessive" leg restraints and the restraints re-injured a prior ankle injury.  These allegations are conclusory and do not plausibly allege the type of conduct that violates the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 36 (1993) (When considering the alleged conditions, a court should "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." (emphasis in original)).

In considering similar claims alleging the use of tight handcuffs or mechanical restraints, the courts have considered (1) whether the handcuffs were "unreasonably tight"; (2) whether defendants ignored the inmate's pleas that the handcuffs were too tight; and (3) the "degree of injury."  *Boyd v. Doe*, 9:18-CV-1333, 2019 WL 1771501, at *8 (N.D.N.Y. Apr. 23, 2019). Applying these factors to the use of leg restraints to Plaintiff during transports to outside hospitals, the Court finds that Plaintiff does not allege a plausible Eighth Amendment violation.  He does not allege anything other than that Sutter's use of leg restraints was "excessive" and it re-injured a prior injury.  Simply stated, these allegations are too conclusory to allege a plausible claim for relief.

Accordingly, the claims against Sgts. Sutter and Doe, whether construed as a claim for (1) deliberate indifference to a serious medical need, or (2) use of excessive force, are dismissed with prejudice unless Plaintiff files a third amended complaint as directed.

### ii.  Interference with Physical Therapy

This claim is not pleaded cogently and appears incomplete.  It appears to allege that after Sutter re-injured Plaintiff's ankle, sometime between February and July 7, 2021, PA Graf, NP Schunk, D. Bonning, and RN V. Hawley denied him physical therapy.  It also alleges, however, that he was denied physical therapy "since 2018 re-injury."  ECF No. 18 at 21.  Graf "finally"

recommended physical therapy, which had been approved back in 2018, and on October 22, 2019, when Plaintiff arrived for a physical therapy appointment, he also had a conflicting "Mandatory" law library call-out.  If he failed to show for the law library call-out, he would be issued a misbehavior report.  He chose to attend the law library call-out.  Plaintiff's left elbow was painful because the handcuffs cut into his skin and the physical therapist never executed the Refusal of Medical Examination and/or Treatment Form.  The Form was executed by a security staff member. *Id.*

First, it is unclear when Plaintiff was denied physical therapy, whether it was between February and July 2021 when Sutter allegedly used tight leg restraints on him during hospital transports, or October 22, 2019, when Plaintiff chose to attend a law library call-out rather than a physical therapy appointment, or in 2018 when physical therapy was approved.  Second, there are no allegations supporting a claim of deliberate indifference to a serious medical need.

Accordingly, in the absence of allegations regarding the date(s) he was denied physical therapy and how these allegations rise to an unconstitutional denial of medical care, the Court finds these allegations fail to a state claim upon which relief can be granted and this claim is dismissed unless Plaintiff files a third amended complaint.

### iii.  Denial of Cane

Plaintiff alleges that he currently uses a walker "and since [a] 2007 denial of Physical Therapy due to a left ankle bone fracture," Defendants Schunk, Graf, Williams, and Morley "refused to provide a cane, forcing Plaintiff to walk on a painful, swollen left ankle bone prompting [the filing of a grievance.]"  ECF No. 18 at 21.  Again, Plaintiff does not allege when he was denied a cane, who specifically denied him a cane, how his previous left ankle fracture is currently a serious medical condition, and how any Defendant was deliberately indifferent to his left ankle

injury by refusing to provide him a cane.  Because the second amended complaint lacks any factual detail suggesting that Defendants were deliberately indifferent to a serious medical need—*i.e.*, a previous ankle injury—by not providing Plaintiff a cane, but rather providing him a walker—both of which require Plaintiff to place weight on his ankle—this claim is dismissed unless Plaintiff files a third amended complaint.

### iv.   Failure to Protect Plaintiff from Exposure to COVID-19

Plaintiff alleges that Defendants Annucci, Morley, and the Infectious Disease Control Nurses at Attica and Wende "could not ensure that they can prevent Plaintiff from contracting COVID[-]19 etc. either other inmates, staff or outside hospital staff (Many refusing to get the shots or being tested) threatening Plaintiff's life prompting [the filing of a grievance] at Wende [RMU] where the most ill inmates are held, staff come and go without wearing a simple mask, etc."  ECF No. 18 at 21-22.  Supervisors failed to enforce COVID-19 safety protocols unless their higher-level supervisors were present.  Plaintiff was told by Wende RMU Staff that when he was at ECMC for chemotherapy treatment he was treated by someone there who tested positive.  *Id.* at 22.

A similar claim alleging a failure to protect Plaintiff from exposure to COVID-19 was raised previously in *McFadden II* when Plaintiff was at Attica and before his cancer diagnosis--neither of which alters the Court's conclusion therein that the claim failed to state an Eighth Amendment claim.  Therein, Plaintiff alleged that Defendants Annucci, Morley and Noeth "[were] not taking any preventative steps to prevent the wide-spread of COVID-19, among the most vulnerable population over 65 years old, with underlying heart conditions like Heart Disease."  *McFadden II*, 2021 WL 463829, at *14.  In that Decision and Order, this Court granted Defendants' motion to dismiss this claim without prejudice to repleading because, although Plaintiff had alleged that COVID-19 posed an objectively serious risk of harm, "his conclusory

allegations fail[ed] to allege the subjective component of an Eighth Amendment claim and contain[ed] no amplifying details regarding Defendants' awareness that COVID-19 preventative measures were not being followed." *Id.* This Court concluded that "[a]llegations of such awareness is necessary to sufficiently plead that these Defendants 'acted recklessly despite knowing the substantial risk that COVID-19 posed to [McFadden] and other inmates.'" *Id.* (quoting *Pepitas v. Griffin*, No. 3:20-cv-00769, 2020 WL 6826723, at *6 (D. Conn. Nov. 21, 2020)) (allegations that warden ignored plaintiff's and other inmates' "multiple direct requests" to enforce facility's mask policy, that warden stood next to officer who was not wearing a mask in close proximity to an inmate and failed to put on a mask, and that warden's refusal to enforce the mask mandate came at a time when COVID-19 "swept through" the facility was sufficient on screening to allow the deliberate indifference claim to proceed against warden").

The instant allegations are not dissimilar from those in *McFadden II* and again fail to allege a deliberate indifference claim based on an alleged failure to protect Plaintiff from exposure to the virus. Simply alleging that supervisors did not require their staffs to enforce protocols, like mask wearing, unless their supervisors were "touring the unit," ECF No. 18 at 22, does not plausibly allege that Defendants Annucci, Morley and Jane/John Doe Infectious Control Nurses acted recklessly despite knowing the risk of exposure to the virus. *See McFadden II*, 2021 WL 463829, at *14; *see also James v. Annucci*, 6:20-CV-6952, 2021 WL 3367530, at * 8 (W.D.N.Y. Aug. 3, 2021) (dismissing plaintiff's Eight Amendment claim against Annucci and the superintendent of the correctional facility alleging their failure to adequately protect plaintiff from the risk of exposure to COVID-19 because there were no allegations of these defendants' personal involvement in the failure to ensure safety protocols were being followed).

Despite the dismissal of Plaintiff's prior claim in *McFadden II*, the Court finds that the change in circumstances, including Plaintiff's new cancer diagnosis and the fact that he was at Wende at the time of the allegations, merits an opportunity to replead this claim. *See, e.g.*, *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once . . . ."). Plaintiff is cautioned, however, that he cannot simply re-state the same conclusory and canned allegations asserted previously in other actions and this one.

Plaintiff's third amended complaint must allege facts suggesting Defendants' actual involvement in the failure to protect Plaintiff from the risk of exposure to COVID-19. *See McFadden II*, 2021 WL 463829, at *14 (("It is undisputed that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death. However, Plaintiff's conclusory allegations fail to allege the subjective component of an Eighth Amendment claim and contain no amplifying details regarding Defendants' awareness that COVID-19 preventative measures were not being followed. Allegations of such awareness is necessary to sufficiently plead that these Defendants acted recklessly despite knowing the substantial risk that COVID-19 posed to [Plaintiff] and other inmates." (citations and internal quotation marks omitted)).

### v. Deliberate indifference to Serious Medical Need (Side-Effects from Chemotherapy)

Plaintiff alleges that Wende RMU Nurses Reddie and Henson did not properly respond to or treat swelling and pain to the left side of his face. Plaintiff reported these symptoms to these Defendants, which they ignored, until Plaintiff asked security in the Unit to call a medical staff member to his room. Reddie then called a physician at Wende who, in turn, called a physician at ECMC, who allegedly told Wende RMU that Plaintiff was exposed to the COVID-19 Delta variant

at ECMC.  ECMC cancelled Plaintiff's third chemotherapy treatment, which was scheduled for that same week.  Wende RMU's Infectious Control Nurse decided to quarantine Plaintiff.  ECF No. 18 at 22.  During this time, Plaintiff's pain and swelling worsened and he was transported to ECMC and released pending a biopsy.  Plaintiff then learned that "another biopsy was performed on the assumption that Plaintiff had [t]onsil [c]ancer." *Id.* (internal quotation marks omitted).  The swelling and pain then spread to the right side of his face, which led to additional tests and another biopsy was recommended.  Plaintiff continues to experience swelling and pain and he is also experiencing pain in his legs.[12]  *Id.* at 22-23.

As addressed above, *see supra* at 20-21, a denial of adequate medical care claim is analyzed under a deliberate indifference standard.  *See Estelle*, 429 U.S. at 104-05.  This standard has both an objective and subjective component.  *Hathaway*, 37 F.3d at 66.  Objectively, a plaintiff must allege a serious health condition.  *Id.* at 66.  "A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (internal quotation marks omitted).  Subjectively, a plaintiff must allege that prison officials had actual knowledge of his serious medical need but was deliberately indifferent.  *See Farmer,* 511 U.S. at 837.

For purposes of screening only, the Court finds that Plaintiff has alleged a sufficiently serious health condition to meet the objective prong.  Liberally construed, the Complaint alleges that Plaintiff suffered pain and swelling in his face, which resulted in an emergency transport to ECMC, where it was determined that a biopsy was necessary.  He, however, does not allege that Defendants Reddie or Henson were deliberately indifferent to his conditions.  Even assuming that

---

[12] This claim initially alleged that Defendants Dr. Morley and Schunk were deliberately indifferent to Plaintiff COPD and CHD when they took no action after viewing Plaintiff's chest x-ray and did not get him a flu shot when requested. ECF No. 1 at 15-16.  The claim has now morphed into a claim relating to an alleged failure to treat what he assumes is a side-effect from the chemotherapy.

Reddie and Henson did not react initially to Plaintiff's pain and swelling, this alleges little more than medical malpractice, if anything at all.  It does not allege the type of conduct necessary to establish deliberate indifference.

Accordingly, this claim is dismissed unless Plaintiff files a third amended complaint.

### e.   Retaliation for Exercising his First and Eighth Amendment Rights

Plaintiff alleges that following his transfer from ECMC to Wende RMU on July 21, 2021 for purposes of monitoring his chemotherapy treatments, he was retaliated against when he was denied personal hygiene and other items, issued a misbehavior report for refusing to cut his facial hair, and placed on one-on-one suicide watch after going on a hunger strike to protest the misbehavior report.  While on suicide watch he was verbally abused and threatened with sexual abuse.  Upon release from suicide watch his Tier II hearing was conducted during which he was denied due process because it was untimely, and the hearing officer did not call the author of the misbehavior report (CO Constanzo) as a witness.[13]   ECF No. 18 at 23-26.

Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977).  To establish a § 1983 retaliation claim, a prisoner must show: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 80 (2d

---

[13] Plaintiff does not allege this as a procedural due process violation and the Court does not construe it as one because there are no allegations regarding the Plaintiff's penalty and the duration of the penalty, if any, and the conditions during the time in which he served the penalty.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).  In other words, Plaintiff does not allege any facts that the condition of his confinement during the time he served the disciplinary penalty, *e.g.*, keeplock, Special Housing Unit, was an "atypical and significant hardship" when compared to the ordinary incidents of prison life.  *Id.*

Cir. 1996).  A finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage." *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).  Moreover, courts recognize that retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike.  *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("[B]ecause we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoner's claims of retaliation with skepticism and particular care"), *abrogated on other grounds Tangreti*, 983 F.3d at 609; *see also Graham*, 89 F.3d at 79.  Thus, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone [because i]n such a case, the prisoner has no factual basis for the claim . . . ." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983).

Plaintiff's retaliation claims are the precise type of claims the Second Circuit has cautioned district courts to critically review because they are prone to abuse.  The claims are wholly conclusory and attempt to causally connect a single complaint about being denied personal items at Wende RMU with the issuance of a misbehavior report, which resulted in Plaintiff's hunger strike and placement on suicide watch due to his hunger strike.  Plaintiff also alleges that he had to retake his photo identification when his facial hair fell-out and then grew back due to his chemotherapy treatments and that he was denied due process at the Tier II hearing when the hearing was untimely, and the hearing officer did not call the correctional officer who authored the report.  ECF No. 18 at 23-26.  The allegations of adverse action based on a single complaint

regarding the lack of personal items are far too attenuated and conclusory to plausibly allege a retaliation claim.

The Court, therefore, finds that this claim is dismissed unless Plaintiff files a third amended complaint because if fails to state a claim against Defendant Constanzo or any of the supervisory officials named—Eckert and K. Brown.

### f. Freedom of Religion

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabbaz,* 482 U.S. 342, 348 (1984) (citation omitted). "A prisoner's right to practice his religion is, however, not absolute." *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993).

> To assess a prisoner's free exercise claim, the Court "must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective."

*Holland v. City of New York*, 197 F. Supp. 3d 529, 538 (S.D.N.Y. 2016) (quoting *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.1988)).

"To show a belief is 'sincere,' the inmate 'need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious.'" *Brown v. Griffin*, No. 18-CV-5439, 2019 WL 4688641, at *5 (S.D.N.Y. Sept. 25, 2019) (quoting *Ford v. McGinnis*, 352 F.3d 582, 595 (2d Cir.2003)). To establish a "substantial burden," the inmate must show that "the state [has] put[ ] substantial pressure on an adherent to modify his behavior and to violate his beliefs."[14] *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015)

---

[14] The Second Circuit has expressed doubt as to whether a prisoner is required to make this threshold showing. *See Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (noting that the *Salahuddin* holding regarding substantial burden threshold requirement may have been overruled by *Employment Div. v. Smith*, 494 U.S. 872, 887 (1990), but declining

(internal quotation marks omitted).  "[E]ven assuming [Plaintiff] can show that his religious beliefs are sincerely held and were infringed, Defendants' misconduct would be 'excusable if [it] was supported by legitimate penological interests.'"  *Holland*, 197 F. Supp. 3d at 538-39 (quoting *Ford*, 352 F.3d at 588); *see also O'Lone,* 482 U.S. at 349 ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.") (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)).

The true nature of Plaintiff's First Amendment claim is not entirely clear; it appears more akin to a religious history lesson than a claim alleging a constitutional violation.  Liberally construed, Plaintiff alleges he is unable to practice his tolerant ways as a Sufi or Darvesh follower due to the lack of supervision and guidance over Muslim religious leaders and Imams at Attica and the type of religious materials in the prisons.  ECF No. 18 at 26-30.  Frankly, the Court is uncertain how the various sects of Islam and their different teachings and beliefs diverge from Plaintiff's own religious practices and violates his First Amendment right to practice his religion.  He admits that religious services are available to him, but he chooses not to participate in them and to pray on his own to avoid conflict.  ECF No. 18 at 30.  This appears to be a disagreement between Plaintiff and DOCCS related to the teaching of Islam within DOCCS's facilities, not a denial of Plaintiff's right to practice his religion.

Plaintiff therefore fails to plausibly allege a denial of his First Amendment right to freely practice religion and this claim is dismissed unless Plaintiff files a third amended complaint.

---

to reach the question); *see also Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016) (summary order) (noting that the court has not yet decided the issue and applying the substantial burden requirement).  District courts within this circuit continue to apply the substantial burden test when addressing free exercise claims. *See, e.g., Jones v. Annucci*, No. 16-CV-2516, 2018 WL 910594, at *13 (S.D.N.Y. Feb. 14, 2018).

### G.  Second-Hand Smoke Exposure

Plaintiff alleges that Acting Commissioner Annucci failed to enforce New York State's no smoking policy ("Open Air Policy") and permitted staff and inmates to smoke within its facilities so that DOCCS can reap the profits it obtains from selling cigarettes.  It is alleged that Annucci knew of the physical harm of second-hand smoke to Plaintiff's heart condition, which led to a heart attack in 2011.  ECF No. 18 at 30-32.

This same claim was raised in *McFadden* II and dismissed on the defendants' motion because it failed to state a claim upon which relief can be granted.  2021 WL 463829, at *11 ("Plaintiff's allegation Defendant Annucci did not enforce the non-smoking policy within DOCCS facilities, [was] wholly conclusory and unsupported by any facts that Annucci knew and disregarded an excessive risk of second-hand exposure to Plaintiff.")  Accordingly, this claim is dismissed with prejudice.

### CONCLUSION

For the reasons set forth above, Plaintiff is granted permission to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)-(b), and the following claims are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A: (1) the denial of access to courts claim (First Cause of Action); (2) the denial of Plaintiff's rights to petition the government, remain silent, counsel and procedural due process (Second Cause of Action); and (3) exposure to second-hand smoke (Seventh Cause of Action).

Plaintiff is granted leave to amend to file a third amended complaint regarding the following claims: (1) deliberate indifference based on the failure to diagnose Plaintiff's cancer against Defendants Dr. Morley, Jane Doe RN, and John Doe CO (Third Cause of Action); (2) deliberate indifference based on (a) the use of leg restraints against Defendants Sutter and John

Doe Sgt. (b) the denial of physical therapy against PA Graf, NP Schunk, Nurse Bonning and Nurse Henson, (c) denial of a cane against PA Graf, NP Schunk, Dr. Williams, and Dr. Morley, (d) risk of exposure to COVID-19 against Acting Commissioner Annucci, Dr. Morley, Jane Does, Wende Infectious Disease Control Nurses, and (e) failure to treat side-effects from chemotherapy treatments against Nurses Reddie and Henson (Fourth Cause of Action); (3) retaliation against Defendants Constanzo, Wende Superintendent Eckert, and Wende Acting Deputy Superintendent Brown (Fifth Cause of Action); and (4) denial of right to freely practice his religion against Defendants Ahmad and Muhbi (Sixth Cause of Action).  These claims will be dismissed without further order of the Court under 28 U.S.C. § 1915(e)(2)(B) and 1915A(b) unless Plaintiff files a third amended complaint **no later than 45 days after the date of this Order** in which he includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

The following claim may proceed to service: deliberate indifference based on the failure to diagnose Plaintiff's cancer against PA Graf, NP Schunk, and Dr. Williams (Third Cause of Action).

Plaintiff is advised that an amended complaint is intended to ***completely replace*** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied sub nom.*, *Vesco & Co., Inc. v. Int'l Controls Corp.*, 434 U.S. 1014 (1978*); see also Shields v. Citytrust Bancorp*, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).  Therefore, any third amended complaint must include all allegations against each Defendant that the Court (1) has concluded may proceed to service and (2) has granted Plaintiff leave to file a third amended complaint, so that the third amended complaint stands alone as the only complaint that Defendants must answer in this action.  **Plaintiff may not include in**

**the third amended complaint, if he chooses to file one (1) new or supplemental claims not previously raised in the Second Amended Complaint or (2) claims that are dismissed herein with prejudice without leave to amend.  If Plaintiff includes any such claims in the third amended complaint, they will be dismissed as beyond the scope of the leave granted.** *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (collecting cases) (summary order) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."); *Bravo v. Established Burger One, LLC*, No. 12 Civ. 9044, 2013 WL 5549495, at *5 (E.D.N.Y. Oct. 8, 2013) (noting that a district court has the inherent authority to dismiss claims that exceed a leave to amend in violation of a court's order.).

If Plaintiff does not file a third amended complaint **no later than 45 days after the date this Order is dated**, (1) the Clerk of Court is directed to cause the United States Marshals Service to serve the Summons and Second Amended Complaint, Docket Item 18, on Defendants PA Graf, NP Schunk, and Dr. Williams <u>only</u> with respect to the Eighth Amendment deliberate indifference claim alleging a failure to diagnose Plaintiff's cancer, (2) all other claims will be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B) and 1915A(b), (3) all other Defendants will be terminated as parties to this action, and (4) the Clerk of Court shall amend the official caption of this action accordingly.   Upon service of the Summons and Second Amended Complaint, Defendants, pursuant to 42 U.S.C. § 1915(g)(2), shall answer or otherwise respond to the Second Amended Complaint.

The Clerk of Court is directed to send to Plaintiff with this order a copy of the Second Amended Complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint.

IT IS SO ORDERED.

Dated: January 28, 2022
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York